**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| RAMIRO CANALES, | § | |
|       Plaintiff/Counter-Defendant, | § | |
| | § | |
| V. | § | A-12-CV-1036-LY |
| | § | |
| ALM MEDIA, LLC, and | § | |
| ALM MEDIA PROPERTIES, LLC, | § | |
|       Defendant/Counter-Plaintiff. | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE JUDGE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiff/Counter-Defendant's Motion to Dismiss Defendant's Counterclaims and Affirmative Defenses (Dkt. No. 27); Plaintiff/Counter-Defendant's Advisory to the Court (Dkt. No. 28); Defendant/Counter-Plaintiff's Response to Plaintiff's Motion to Dismiss (Dkt. No. 29); and Plaintiff/Counter-Defendant's Reply (Dkt. No. 30). The District Court referred the above motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I.  BACKGROUND

**A.    General Background**

This case arises from a lingering disagreement over the usage of a disputed mark "Supreme Court Insider."[1]  In his First Amended Complaint, Plaintiff/Counter-Defendant Ramiro Canales

---

[1] The precise mark at issue is unclear from the parties' filings.  Both parties have previously filed applications with the U.S. Patent and Trademark Office or the Texas Secretary of State in which

("Canales") asserts several causes of action related to trademark infringement, including (1) violation of § 16.102 of the Texas Business and Commerce Code; (2) common law trademark infringement; (3) common law unfair competition; and (4) cybersquatting in violation of 15 U.S.C. § 1125(d) of the Lanham Act. Dkt. No. 20, ¶¶ 66–85 [hereinafter First Amended Complaint]. Generally, Canales claims that he has used the mark "Supreme Court Insider" since August 2005 as a part of a website he maintains, MyCapitol.com, which provides political, legislative, and business information services. *Id.* ¶¶ 12, 14. According to Canales, the mark "Supreme Court Insider" has been in continuous use since August 2005 and directs visitors to a page within MyCapitol.com bearing the mark "Supreme Court Insider." *Id.* ¶ 15.

In May and June of 2010, Defendant/Counter-Plaintiff ALM Media, LLC, and ALM Media Properties, LLC ("ALM"), implemented and launched an e-newsletter titled "Supreme Court Insider." *Id.* ¶¶ 23–27; *see also* Dkt. No. 26, ¶¶ 23–27 [hereinafter First Amended Answer]. ALM filed an application with the U.S. Patent and Trademark Office to protect the "Supreme Court Insider" mark in relation to their new e-newsletter. First Amended Complaint ¶¶ 24, 27; First Amended Answer ¶¶ 24, 27. Canales asserts that he first learned about ALM's interest in the mark "Supreme Court Insider" after he discovered that ALM had visited his webpage in October 2010. First Amended Complaint ¶ 30. Thereafter, Canales claims that ALM made multiple visits to Canales's webpage, and contends that ALM thereby acquired knowledge Canales was using the mark "Supreme Court Insider" to provide legal information services. *Id.* ¶¶ 32–42. On October 4, 2012, Canales filed suit against ALM in Travis County District Court. *Id.* ¶ 2. ALM removed the case to

---

they seek the trademark rights to slightly different variations of the mark "Supreme Court Insider." For the purposes of simplicity, the Court will refer to the mark at issue in this case as "Supreme Court Insider."

this Court on November 9, 2012, based on diversity of citizenship.  *Id.*  On January 9, 2013, ALM changed the name of their newsletter to "Supreme Court Brief."  *Id.* at ¶ 50; *see also* First Amended Answer ¶ 50.

The parties also litigated related issues before the Patent and Trademark Office.  First Amended Complaint ¶¶ 52–65.  As noted, ALM had filed an application with the PTO to register the mark "Supreme Court Insider" and Canales opposed ALM's application.  *Id.*  Both parties filed motions for summary judgment with the Trademark Trial and Appeal Board.  *Id.* ¶¶ 58–59; *see also* Dkt. No. 27, Exh. B.  The Board granted Canales' motion in part, dismissing ALM's affirmative defenses, and addressing the issue of priority of use in commerce. *Id.*  Following this, on September 24, 2012, ALM filed its Withdrawal of Application for the mark "Supreme Court Insider."  First Amended Answer ¶ 62.  Based on the withdrawal, on September 25, the TTAB entered judgment sustaining Canales' opposition to registration of the mark.  ALM did not appeal the judgment.  *Id.* ¶ 63–64; First Amended Complaint ¶¶ 63–64.

**B.      ALM's Counterclaims**

In its First Amended Answer, ALM claims that Canales is a trademark troll who registers domain names without the intent to use the name in commerce.  *Id.* ¶ 110.  ALM contends that Canales has registered over 1,100 domain names.  *Id.* ¶ 121.  ALM contends that Canales did not use the mark "Supreme Court Insider" in commerce and failed to register the mark with any appropriate agency prior to ALM's usage of it.  *Id.* ¶ 111–12.  According to ALM, the domain name "supremecourtinsider.com" merely directs visitors to a generic website that only displays links to third-party websites and does not contain any original content from Canales.  *Id.* ¶¶ 117, 133–34.  Additionally, ALM argues that in the course of the parties' proceedings before the TTAB, Canales

provided discovery responses that admitted that he had not used the mark "Supreme Court Insider" in commerce prior to ALM's attempt to register the mark. *Id.* ¶¶ 125–28.

In its counterclaims, ALM alleges that it is Canales that has acted in bad faith and has intentionally used the mark "Supreme Court Insider," with full knowledge that ALM has superior rights to the mark. *Id.* ¶ 142. Furthermore, ALM contends that Canales falsely and fraudulently asserted his rights to the mark "Supreme Court Insider" in his applications with the Texas Secretary of State and with the U.S. Patent and Trademark Office, even though he was fully aware of ALM's usage of the mark. *Id.* ¶¶ 143–46. Based upon these facts and allegations, ALM asserts several counterclaims against Canales concerning the mark "Supreme Court Insider," including requests for a declaratory judgment under both the Texas and Federal Declaratory Judgment Acts that Canales did not use the mark in commerce before June 2, 2010, that ALM has prior common law rights in the mark, and that ALM did not infringe any rights of Canales in the mark; a claim under the Lanham Act for unfair competition, false designation of origin, and dilution; a common law unfair competition claim; a request for the cancellation of Canales's Texas trademark registration because it was obtained fraudulently; and a claim for false or fraudulent registration. First Amended Answer ¶¶ 151–73.

## II. LEGAL STANDARD

Canales moves to dismiss ALM's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief. A motion under Rule 12(b)(1) should be granted only if it appears beyond doubt that the plaintiff cannot prove a plausible set of facts in support of its claim. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)).

The Court may find a plausible set of facts by considering: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane*, 529 F.3d at 557 (quoting *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The Court will accept all well-pleaded allegations in the complaint as true, and construe those allegations in the light most favorable to Plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). The party asserting jurisdiction bears the burden of proof when a 12(b)(1) motion to dismiss is filed. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* In 2009, the Supreme Court expounded on the *Twombly* standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a

motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true.  *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2009).

Canales also seeks to dismiss ALM's counterclaims and affirmative defense of fraud pursuant to Federal Rule of Civil Procedure 9(b) for failure to plead fraud with particularity.  *See e.g.*, *Array Holdings, Inc. v. Safoco, Inc.*, No. 12–366, 2013 WL 4588506 at *2 (S.D. Tex. Aug. 28, 2013) (citing *Siemens Med. Solutions USA, Inc. v. Sunrise Med. Tech., Inc.*, No. 04–2711, 2005 WL 615747 at *5 (N.D. Tex. Mar. 16, 2005)) (analyzing an affirmative defense of fraud under the requirements of Rule 9(b)).  A motion to dismiss pursuant to Rule 9(b) tests the factual sufficiency of the plaintiffs' allegations.  *See Tel–Phonic Services, Inc. v. TBS International, Inc.*, 975 F.2d 1134, 1138 (5th Cir.1992).  The rule provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).  Pleading fraud with particularity in requires "[a]t a minimum. . .the particulars of time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel–Phonic Services, Inc.*, 975 F.2d at 1139; *see also Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003); *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

### III.  ANALYSIS

In his Motion to Dismiss, Canales presents a variety of claims challenging the ability of ALM to assert its counterclaims and the merits of those claims.  Dkt. No. 27 at 6–19.  As a general matter, Canales contends that ALM does not have standing to assert its counterclaims and, in the alternative, that ALM's counterclaims are barred by the doctrine of collateral estoppel. *Id.* at 6–9.  Additionally,

Canales argues that ALM is essentially asking this Court to review the findings of the TTAB on the issues of priority and use in commerce, a review that is barred by the applicable statute of limitations. *Id.* at 9–10. Furthermore, in relation to ALM's requests for declaratory judgment, Canales claims that (1) the Texas Uniform Declaratory Judgment Act is not substantive law in federal court and (2) a declaratory judgment would be futile because ALM lacks constitutional standing to bring the counterclaim, merely repeats its affirmative defenses, and asks for an advisory opinion. *Id.* at 10–13. Canales also asserts that ALM's counterclaims against Canales for unfair competition, false designation of origin, and dilution under the Lanham Act are frivolous and legally insufficient to state a claim. *Id.* at 14–16. Canales further charges ALM with failing to identify any false statements made by Canales in relation to his services to sustain ALM's claim of common law unfair competition. *Id.* at 18–19. Finally, Canales submits that ALM has failed to meet the heightened pleading requirements of Rule 9(b) for its counterclaim and affirmative defense of fraud. *Id.* at 16–18. The Court rejects all of these arguments.

### A.    Canales's General Contentions

Canales submits that ALM is barred from bringing its counterclaims because (1) ALM lacks standing to assert those counterclaims; (2) ALM is attempting to bring claims which have already been fully and fairly litigated before the TTAB; and (3) to the extent ALM seeks a review of the TTAB's decision, the statute of limitations has expired. Dkt. No. 27 at 6–10. Specifically, with regard to his standing argument, Canales contends that ALM has not pleaded any concrete or actual injury that is certainly impending. *Id.* at 8. In response, ALM asserts that it has pleaded a concrete and actual injury. Dkt. No. 29 at 6. ALM argues that Canales has "knowingly infringed ALM's 'Supreme Court Insider' trademark after ALM was the first party to use the mark in commerce in

June of 2010." *Id.* Addressing Canales's collateral estoppel and statute of limitations objections, ALM submits that it is not attempting to appeal the decision of the TTAB because ALM withdrew its application to register the "Supreme Court Insider" mark with the TTAB. *Id.* at 9–13. Consequently, TTAB's refusal to grant ALM a registration of the "Supreme Court Insider" mark was not a decision on the merits. *Id.* at 10. Rather, it was based on ALM's withdrawal of its application. *Id.*

### 1.    Standing

To demonstrate standing sufficient to pursue a cause of action in federal court, there must be "a personal injury fairly traceable to the [counter-defendant's] allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984).

> A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot of the dispute is not longer embedded in any actual controversy about the [counter-plaintiff's] particular legal rights.

*Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726–27 (2013) (internal citations and quotations omitted). Based on ALM's First Amended Answer, the Court concludes that ALM has sufficiently pleaded an injury that provides it with standing to pursue its counterclaims. Here, ALM's basic contention is that it acquired superior common law rights in the mark "Supreme Court Insider" prior to any use in commerce by Canales. Consequently, ALM alleges that Canales knowingly infringed upon ALM's rights in the mark "Supreme Court Insider" when Canales continued to use the mark after ALM had acquired rights to the mark and when he filed a Texas trademark application on June 22, 2012. First Amended Answer ¶¶ 139–45. ALM claims that Canales knowingly and continuously

infringed upon ALM's rights in the "Supreme Court Insider" mark.  As factual support, ALM notes that it filed a trademark application for the mark "Supreme Court Insider" with the PTO on May 28, 2010, and used the mark in commerce by announcing the launch of its e-newsletter with that title in June, 2010. *Id.* ¶ 115.  Furthermore, ALM alleges that it was only in October 2010—several months after ALM had already acquired its rights in the mark—that Canales added any original content to the webpage on which he had previously included only the words "Supreme Court Insider."  *Id.* ¶ 140.  Accepting all well-pleaded allegations in the counterclaim as true, and construing those allegations in the light most favorable to ALM, the Court disagrees with Canales that ALM has failed to state an injury sufficient to establish standing for the purposes of Article III.

For his argument, Canales relies, in part, on two recent U.S. Supreme Court decisions.  Dkt. No. 27 at 6–9.  Referencing the Supreme Court's opinion in *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013), Canales argues that to satisfy the requirements of Article III standing, an injury must be "concrete, particularized, and actual or imminent . . . ."  *Id.* at 1147.  Canales notes that a party may not "manufacture standing by incurring costs in anticipation of non-imminent harm."  *Id.* at 1155.  Canales also seeks to analogize the instant case to *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721 (2013), where the Supreme Court rejected Already's arguments that it could establish standing because (1) investors would be apprehensive about investing in Already because Nike was free to assert its trademark; (2) Nike had decided to sue Already for trademark infringement; and (3) as a competitor of Nike, Already inherently had standing to challenge Nike's intellectual property.  *Id.* at 729–30. The Court is not persuaded by these arguments.

First, as noted previously, ALM's contention is that it acquired common law rights to use the mark prior to any use by Canales.  Therefore, when Canales continued to use the mark on his sites

and when he submitted a Texas trademark application, he infringed upon ALM's rights in the mark. Canales does not deny that he is continuing to use the mark on his websites nor does he dispute that he filed a Texas trademark application in June 2012. Rather, Canales's argument is that ALM has abandoned its use of the mark "Supreme Court Insider" and has no plans to use it again. Dkt. No. 27 at 8. Other than Canales's conclusory allegation, however, Canales pleads no facts to support his assertion. Indeed, ALM explicitly disputes that it has abandoned the "Supreme Court Insider" mark. Dkt. No. 29 at 8. This is sufficient to allege a concrete and actual injury for Article III standing. In fact, ALM claims that it continues to be injured by Canales's actions as he is still displaying the mark "Supreme Court Insider" on his website. Dkt. No. 29 at 6–7.

Additionally, Canales's reliance upon *Already, LLC*, is misplaced. In *Already, LLC*, the Supreme Court considered "whether a covenant not to enforce a trademark against a competitor's existing products and any future 'colorable imitations' moots the competitor's action to have the trademark declared invalid." 133 S. Ct. at 725. The case involved a dispute between Already and Nike over trademarks owned by Nike. *Id.* Ultimately, the Supreme Court concluded that Already's counterclaims were mooted by Nike's issuance of a "Covenant Not to Sue," in which Nike promised not to pursue its trademark infringement claims against Already or any affiliated entity based on Already's existing footwear designs or any future designs that constituted a "colorable imitation" of those designs. *Id.* By contrast, neither party has issued a "Covenant Not to Sue" in this case. As the case itself demonstrates, the parties are actively engaged in a dispute about the ownership of the rights to the "Supreme Court Insider" mark. Therefore, the holding of *Already, LLC* is inapplicable to this dispute.

### 2.       Collateral Estoppel and Statute of Limitations

Canales next contends that ALM's counterclaims are barred by collateral estoppel and the statute of limitations. Dkt. No. 27 at 9–10. The doctrine of collateral estoppel "bars relitigation of an issue actually and necessarily decided in a prior action." *United States v. Renda*, 709 F.3d 472, 486 (5th Cir. 2013) (quoting *Wolfson v. Baker*, 623 F.2d 1074, 1077 (5th Cir. 1980)). Under federal law, "[t]he doctrine of collateral estoppel has three requirements: (1) the prior federal decision resulted in a *judgment on the merits*; (2) the same fact issue must have been *actually litigated in the federal court*; and (3) the disposition of that issue must have been *necessary to the outcome* of the prior federal litigation." *Dahiya v. Talmidge Int'l, Ltd.*, 371 F.3d 207, 213 (5th Cir. 2004) (internal quotations omitted) (emphasis added). Here, the facts do not support the application of the doctrine to ALM's counterclaims. In fact, at least two of the requirements have not been met. First, according to documents submitted by Canales himself, when it entered judgment, the TTAB explicitly relied upon ALM's withdrawal of its application for the mark "Supreme Court Insider," and not on a merits-based decision. Dkt. No. 27, Exh. D; *see also* First Amended Answer ¶¶ 62–63. Secondly, it is obvious that no fact issue was resolved by the TTAB's decision as the TTAB entered judgment against ALM based on ALM's withdrawal of its application, not on the resolution of any factual issues. *Id.*

Further, to the extent Canales relies on the TTAB's summary judgment order for his collateral estoppel argument, his argument also fails.[2] The denial of summary judgment is not a final judgment, *Johnson v. Odom*, 910 F.2d 1273, 1276 (5th Cir. 1990) (per curiam), and "does not settle

---

[2] Canales also filed a motion for summary judgment with the TTAB on the issue of priority. His motion was granted in part and denied in part. Dkt. No. 27, Exh. B.

or even tentatively decide anything about the merits of the claim." *Switz. Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.*, 385 U.S. 23, 25 (1966). "It is strictly a pretrial order that decides only one thing—that the case should go to trial." *Id.* An order denying summary judgment is simply not a judgment on the merits. *See, e.g.*, *Odneal v. Pierce*, No. 04–454, 2011 WL 2678940 at *8 (S.D. Tex. July 7, 2011) ("The denial of Defendants' motion for summary judgment clearly did not constitute a judgment on the merits, a consent decree, or some similar form of judicially sanctioned relief.") (internal quotations and citations omitted). Therefore, the doctrine of collateral estoppel is not applicable to ALM's counterclaims in this case.

Finally, ALM's counterclaims are also not barred by the statute of limitations. The counterclaims that ALM asserts in the instant case are for trademark infringement. As noted previously, ALM submits that Canales is infringing upon ALM's rights in the mark "Supreme Court Insider" by displaying the mark on his website. First Amended Answer ¶¶ 139–42. ALM also contends that Canales committed fraud when he filed a Texas trademark application for the "Supreme Court Insider" mark despite his knowledge of ALM's rights to the mark. *Id.* ¶¶ 143–45. ALM is not contending that this Court should reverse the TTAB's decision not to grant ALM registration for the "Supreme Court Insider" mark. Thus, the statute of limitations for an appeal from a decision of the TTAB, outlined in 15 U.S.C. § 1071(b), does not apply here.

**B.      ALM's Request for a Declaratory Judgment**

In Counterclaims One and Two, ALM asserts declaratory judgment claims under both the Texas and Federal Declaratory Judgment Acts. First Amended Answer ¶¶ 151–61. ALM contends that it is entitled to a declaratory judgment that Canales did not use the "Supreme Court Insider" mark in commerce prior to June 2, 2010, and that ALM possesses common-law rights in the mark

superior to any rights of Canales. *Id.* ¶¶ 153–54.  ALM further argues that it is not liable to Canales

for any of his alleged claims in this case. *Id.* ¶ 155.  In response, Canales makes two arguments:

(1) ALM is not entitled to relief under the Texas act because the TUDJA is not applicable in federal

court; and (2) ALM lacks standing for a declaration, the request merely repeats ALM's affirmative

defenses, and seeks an advisory opinion. Dkt. No. 27 at 10–13.

The law in this circuit is muddled regarding whether a federal litigant may obtain declaratory

relief under a state declaratory judgment statute, or whether the litigant must instead proceed under

the Federal Declaratory Judgment Act.[3]  In *Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407 (5th

Cir. 2006), the Fifth Circuit analyzed whether a party may obtain attorney's fees in federal court

under the TUDJA.  *Id.* at 409.  After reviewing the case law, the *Camacho* panel concluded that the

TUDJA was a procedural statute and that appellants could not claim attorney's fees based upon that

statute.  *Id.*  In doing so, the Fifth Circuit affirmed its previous decision in *Utica Lloyd's of Tex. v.*

*Mitchell*, 138 F.3d 208 (5th Cir. 1998), which had determined that the TUDJA was not substantive

law.  *Id.* at 210.  Since *Camacho*, the Fifth Circuit has, on at least one occasion—in an unpublished

decision—upheld an award of attorney's fees under the TUDJA.  *See Philadelphia Indem. Ins. Co.*

*v. SSR Hospitality, Inc.*, 459 Fed.Appx. 308, 317–18 (5th Cir. 2012) (finding no plain error and

affirming the district court's award of attorney's fees).  Furthermore, several district courts in the

Fifth Circuit, including judges in this District, have permitted claims under the TUDJA to proceed.[4]

---

[3]Given that ALM seeks a declaration under both the federal and the Texas acts, the only reason this question matters is because the Texas act permits the recovery of attorney's fees while the federal act does not.

[4] *See, e.g.*, *Smith v. Stericycle, Inc.*, 538 F.Supp.2d 960, 965 (W.D. Tex. 2008) (granting in part and denying in part plaintiff's motion for summary judgment for declaratory relief under TUDJA); *ExxonMobil Global Servs. Co. v. Gensym Corp.*, 2013 WL 1293772 at *4 (W.D. Tex. Mar.

When the undersigned has weighed in on this issue, I have always concluded that a declaratory judgment may only be obtained in federal court through the procedure created by the Federal Declaratory Judgment Act. For example, in *Century Surety Co. v. Taylor Disposal Operating Inc.*, 2009 WL 3633903 (W.D. Tex. Oct. 29. 2009), I stated:

> The Federal Declaratory Judgment Act "does not by itself provide statutory authority to award attorney's fees that would not otherwise be available under state law in a diversity action." *Mercantile Nat'l Bank v. Bradford Trust Co.*, 850 F.2d 215, 218 (5th Cir. 1988). Furthermore, the "otherwise ... available" source of attorney's fees required under § 2202 must be a substantive source. *See Utica Lloyd's of Texas v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998) ("[A] party may not rely on the Texas [declaratory judgment act] to authorize attorney's fees in a diversity case because the statute is not substantive law."); *accord Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 772 (5th Cir. 1999).

*Id.* at *5. I believe that this is the state of the law in this circuit, and thus will recommend that the District Judge grant the motion to dismiss the declaratory judgment counterclaim based on the Texas Act.

The Court, however, rejects the argument that the federal claim for declaratory relief should also be dismissed. The Federal Declaratory Judgment Act provides that a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.S. § 2201(a) (2006); *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 389 (5th Cir. 2003). When considering whether or not to issue a declaratory judgment, a district court must consider three questions. *Orix Credit Alliance, Inc. v. Wolfe*, 212

---

26, 2013) (granting plaintiff's motion for partial summary judgment on claims brought under the TUDJA regarding the interpretation of a contract); *Picard v. Chase Home Finance, LLC*, 2011 WL 5333060 at *5 (N.D. Tex. Nov. 3, 2011) (denying defendant's motion to dismiss plaintiff's declaratory judgment claims under Rule 12(b)(6) regarding a home loan); *Kingman Holdings, LLC v. Bank of Am., N.A.*, No. 4:11–33, 2011 WL 4431970 at *4 (E.D. Tex. Sept. 22, 2011) (finding that a provision in the TUDJA can be used to determine the matter of lien superiority).

F.3d 891, 895 (5th Cir. 2000).  First, the court considers whether the declaratory action is justiciable, that is whether an "actual controversy" exists between the parties.  *Id.*  Second, the court considers whether it has the authority to grant declaratory relief.  *Id.*  Finally, the court considers how to exercise its broad discretion to decide or dismiss the declaratory judgment action.  *Id.*  Canales submits that declaratory judgment is inappropriate in this instance because ALM: (1) lacks standing; (2) merely repeats its affirmative defenses as counterclaims; and (3) is seeking an advisory opinion. Dkt. No. 27 at 11–13.  The Court has already determined that an actual controversy exists between ALM and Canales.  *See supra* Part III.A.I.  Therefore, Canales's contentions regarding standing and whether ALM is seeking an advisory opinion are unpersuasive.  *See Wacker v. Bisson*, 348 F.2d 602, 605 (5th Cir. 1965) (noting that a declaratory judgment is not an advisory opinion "if the case presents a difference or dispute that is appropriate for judicial determination").

Regarding Canales's argument that ALM has merely re-pled its affirmative defenses as counterclaims, the Court finds sufficient differences that permit ALM's declaratory counterclaims to proceed.  As Canales himself notes in his filings, other district courts have held that "a motion for declaratory judgment that merely restates a party's defenses is insufficient *unless the party can prove that there are issues of greater ramification to be resolved*."  *Hanson Aggregates, Inc. v. Roberts & Schaefer Co.*, No. 3:05–1883, 2006 WL 2285575 at *3 (N.D. Tex. Aug. 9, 2006) (emphasis added).  In this case, ALM's counterclaims essentially allege that it is Canales that has infringed upon ALM's trademark rights in the "Supreme Court Insider" mark, not merely that ALM is not infringing upon Canales's purported rights in the mark.  ALM also seeks a declaration regarding whose rights have priority, and when Canales first used the mark in commerce.  Rule 57 explicitly states that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that

15

is otherwise appropriate." FED. R. CIV. P. 57.  For these reasons, Canales' request to dismiss ALM's

federal declaratory judgment counterclaim should be denied.

## C.      ALM's Lanham Act Counterclaims

Counterclaim Three in ALM's First Amended Answer alleges that Canales violated the

unfair competition, false designation of origin, and anti-dilution provisions of the Lanham Act.  First

Amended Answer ¶¶ 162–67.  More specifically, ALM submits that Canales's use of the "Supreme

Court Insider" mark (1) falsely indicates to consumers that Canales's website is somehow associated

with ALM's services and (2) is likely to cause confusion, mistake, or deceive customers by

suggesting the affiliation between Canales and ALM.  *Id.* ¶¶ 163–64.  Canales makes several

arguments contesting the adequacy of ALM's claims under the Lanham Act.  Dkt. No. 27 at 14–16.

As an initial matter, the Court notes that the sufficiency of ALM's counterclaims under the

Lanham Act are evaluated under the liberal pleading requirements of Rule 8 of the Federal Rules of

Civil Procedure.  *See Tempur-Pedic Int'l Inc., et al. v. Angel Beds, LLC, et al.*, 902 F.Supp.2d 958,

965–67 (S.D. Tex. 2012) (analyzing the existing case law on whether an unfair competition claim

under the Lanham Act is subject to the heightened pleading requirements of Rule 9(b) and

concluding that such claims should be evaluated under Rule 8).  Under Rule 8, a counterclaim need

only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

FED. R. CIV. P. 8(a)(2).  "To survive a Rule 12(b)(6) motion to dismiss, a [counterclaim] 'does not

need detailed factual allegations,' but must provide the [defendant's] grounds for entitlement to

relief, including factual allegations that when assumed to be true 'raise a right to relief above the

speculative level.'" *Cuvillier*, 503 F.3d at 401 (citing *Twombly*, 550 U.S. at 555).  Pursuant to this

standard, "a [counterclaim] will be deemed inadequate only if it fails to (1) provide notice of the

16

circumstances which give rise to the [counterclaim], or (2) set forth sufficient information to outline the elements of the [counterclaim] or permit inferences to be drawn that these elements exist." *Gen. Star Indem. Co. v. Vesta Fire Ins. Corp.*, 173 F.3d 946, 950 (5th Cir. 1999). Because ALM's Lanham Act counterclaims are sufficiently pled, the Court recommends that the District Judge deny Canales's Motion to Dismiss regarding these counterclaims.

To state a claim for unfair competition under § 43(a) of the Lanham Act, ALM must demonstrate that a "word or symbol is likely to cause confusion or mistake as to its affiliation, sponsorship, or origin." *See, e.g., Veracity Research Co. v. Bateman*, No. 3:07–2158, 2008 WL 2951910 at *9 (N.D. Tex. Aug. 1, 2008) (citing 15 U.S.C. § 1125(a)(1)). For a false designation of origin claim under 15 U.S.C. § 1125(a)(1), the Fifth Circuit requires that ALM show the following five elements:

> (1) [Canales] made a false or misleading statement of fact about its product or service; (2) the statement either deceived or had the capacity to deceive a substantial segment of potential customers; (3) the deception was material, in that it was likely to influence consumers' purchasing decisions; (4) the product or service is in interstate commerce; and (5) [ALM] has been or is likely to be injured as a result of the statement at issue.

*Farouk Systems, Inc. v. Costco Wholesale Corp.*, 700 F.Supp.2d 780, 786 (S.D. Tex. 2010) (citing *Pizza Hut v. Papa John's Int'l*, 227 F.3d 489, 495 (5th Cir. 2000)). Finally, federal trademark dilution claims are evaluated under 15 U.S.C. § 1125(c), which provides that

> the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c).  "A mark is famous if it is widely recognized by the general consuming public

of the United States as a designation of source of the goods or services of the mark's owner."  15

U.S.C. § 1125(c)(2)(A).  To determine whether a mark has achieved the requisite recognition, a court

may consider all relevant factors, including (1) the duration, extent, and geographic reach of the

mark; (2) the amount, volume, and geographic extent of sales of services offered under the mark;

and (3) the extent of actual recognition.  15 U.S.C. §§ 1125(c)(2)(A)(i)–(iii).  A dilution by blurring

claim alleges an "association arising from the similarity between a mark or trade name and a famous

mark that impairs the distinctiveness of the famous mark."  15 U.S.C. § 1125(c)(2)(B).  In relation

to a dilution by blurring claim, a court may consider a multitude of relevant factors, including

> (1) the degree of similarity between the mark or trade name and the famous mark; (2) the degree of inherent or acquired distinctiveness of the famous mark; (3) the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (4) the degree of recognition of the famous mark; (5) whether the user of the mark or trade name intended to create an association with the famous mark; and (6) any actual association between the mark or trade name and the famous mark.

15 U.S.C. §§ 1125(c)(2)(B)(i)–(vi).  Relatedly, a dilution by tarnishment claim arises "from the

similarity between a mark or trade name and a famous mark that harms the reputation of the famous

mark."  15 U.S.C. § 1125(c)(2)(C).

 In this case, ALM has clearly alleged that Canales's "unauthorized use" of the mark

"Supreme Court Insider" is likely to cause confusion or mistake among potential ALM customers

by suggesting an affiliation between Canales and ALM.  First Amended Answer ¶ 164.  ALM

supports this allegation by noting that Canales displays the mark "Supreme Court Insider" on his

website, MyCapitol.com, but that the webpages only serve as links to third-party websites.  *Id.* ¶¶

126, 133, 136.  Taken together, ALM's pleadings concerning its unfair competition counterclaim

under the Lanham Act provide sufficient notice to Canales regarding the circumstances giving rise to ALM's unfair competition counterclaim. The Court also rejects Canales's argument that ALM's Lanham Act counterclaims should be dismissed because they are inconsistent with ALM's assertion that Canales never used the mark "Supreme Court Insider" in commerce. Dkt. No. 27 at 14. Whether ALM's Lanham Act counterclaims are inconsistent with ALM's contention that Canales never used the mark "Supreme Court Insider" in commerce is irrelevant at this stage in the proceedings and, in any event, not an appropriate question to be determined on a motion to dismiss. *See* FED R. CIV. P. 8(d)(3) (noting that a party may plead as many claims or defenses, regardless of inconsistency); *see also United States v. BNP Paribas SA*, 884 F.Supp.2d 589, 616 (S.D. Tex. 2012) (concluding that a motion to dismiss is not the appropriate vehicle for determining whether certain claims are precluded). As such, the Court cannot agree with Canales that ALM's unfair competition counterclaim should be dismissed.

Similarly, the Court also declines to recommend that the District Judge dismiss ALM's false designation of origin counterclaim. Contrary to Canales's belief, ALM has alleged that Canales has made a false statement about his legal information services. ALM has explicitly stated that Canales's use of the mark "Supreme Court Insider" "falsely indicates to consumers that [Canales's] website and other services, originate from, are approved by, are sponsored by, are licensed by, or are affiliated with ALM [] or are otherwise associated with ALM's [] services of providing high quality news and insight." First Amended Answer ¶ 163. In other words, ALM alleges that by using the mark, Canales has falsely indicated to potential consumers that his website is somehow affiliated with ALM's services. For the purposes of the liberal pleading requirements of Rule 8, paragraph 163 of the First Amended Answer sufficiently pleads and provides notice to Canales of the circumstances

giving rise to ALM's false designation of origin counterclaim.  Furthermore, ALM has also asserted

that Canales's use of the "Supreme Court Insider" mark is likely to deceive customers and potential

customers and that Canales has displayed the mark on his website, MyCapitol.com.  *Id.* ¶¶ 126, 164.

Finally, although ALM's Lanham Act dilution counterclaim is not pled as well as it might

have been, there is sufficient information in the Amended Answer to provide fair notice to Canales

of ALM's dilution counterclaim.  As noted previously, stating a claim for dilution under federal law

requires an association arising from the similarity between a mark or trade name and a famous mark

that either harms famous mark's reputation or impairs its distinctiveness.   15 U.S.C. §§

1125(c)(2)(B)–(C).  Here, ALM has clearly alleged that the similarity between ALM's and Canales's

usage of the mark "Supreme Court Insider," and the affiliation it suggests between ALM and

Canales, is likely to deceive or confuse potential customers.  First Amended Answer ¶¶ 163–64.

ALM also repeatedly notes that Canales's website only provided links to third-party websites and

not original, independent content (as of May 2010).  *Id.* ¶¶ 133–34.  According to ALM, this is in

contrast to the news and insight provided on its webpages.  *Id.* ¶ 163.  Considered together, it can

certainly be inferred that ALM's concern is that the suggested affiliation between ALM and Canales,

caused by Canales's improper use of the "Supreme Court Insider" mark, harms the reputation of the

"Supreme Court Insider" mark or impairs its distinctiveness.  Additionally, to the extent Canales

claims that ALM has failed to demonstrate that the "Supreme Court Insider" mark is famous or

distinctive, the Court disagrees.  Canales's own complaint notes that in 2012, there were 43,000

subscribers to ALM's "Supreme Court Insider" e-newsletter.  First Amended Complaint ¶ 44; First

Amended Answer ¶ 44.  Given the number of subscriptions to ALM's "Supreme Court Insider" e-

newsletter, the Court concludes that there is sufficient information to suggest that ALM has achieved the requisite degree of recognition for the mark "Supreme Court Insider" to survive dismissal.

In summary, the Court recommends that the District Judge **DENY** Canales's Motion to Dismiss as it relates to ALM's Lanham Act counterclaims.

### D.      ALM's Common Law Unfair Competition Claim

ALM also alleges claims of common law unfair competition against Canales. First Amended Answer ¶¶ 168–69. Moving to dismiss this counterclaim, Canales argues that fraud is an essential element of a common law unfair competition claim and consequently, the heightened standards of Rule 9(b) apply. Dkt. No. 27 at 18–19. Canales asserts that ALM has not alleged that Canales made any misrepresentations about his legal information services and thus, ALM's counterclaim of common law unfair competition should be dismissed. *Id.* In response, ALM asserts that the elements for common law unfair competition are the same as those under federal law. Dkt. No. 29 at 18. Therefore, ALM argues that because it has sufficiently stated its unfair competition claim under federal law, it has also stated a claim for common law unfair competition. *Id.* at 18–19.

"A trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'" *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010) (citing *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 n.3 (Tex.App.—Austin 2001, pet. denied)). Thus, the Court agrees with ALM that because it has sufficiently stated its unfair competition claim under the Lanham Act, it has also stated a claim for common law unfair competition. Furthermore, contrary to Canales's assertion, unfair competition claims under federal law are evaluated under the liberal pleading requirements of Rule

8, not Rule 9(b).  *See Tempur-Pedic Int'l Inc., et al.*, 902 F.Supp.2d at 965–67.  Consequently, the Court recommends that the District Judge **DENY** Canales's Motion to Dismiss regarding ALM's common law unfair competition counterclaim.

### E.   ALM's Counterclaims and Affirmative Defense Relating to Fraud

In Counterclaims Five and Six, ALM seeks relief under TEX. BUS. & COM. CODE §§ 16.064(a)(4)–(5), 16.101.  First Amended Answer ¶¶ 170–73.  ALM alleges that Canales fraudulently obtained his Texas trademark registration and that (1) this Court should cancel Canales's registration of the mark "Supreme Court Insider" and (2) hold Canales liable for damages ALM has sustained as a result of Canales's use of the mark.  *Id.* ¶¶ 171, 173.  In response, Canales contends that: (1) ALM alleges legal conclusions which this Court is not bound to accept as true; (2) ALM has failed to explain why Canales's application for the mark "Supreme Court Insider" was fraudulent; (3) ALM has not identified the correct date or the location where the alleged fraudulent statements were made; (4) ALM has not explained how disclosure of its application for the "Supreme Court Insider" mark with the U.S. Patent and Trademark Office creates an inference of fraud and (5) ALM states legal conclusions in its affirmative defense, which fails to satisfy the pleading requirements of Rule 9(b).  Dkt. No. 27 at 16–18.

In determining whether to dismiss a claim, a court should not consider the merits of the claim.  *See, e.g.*, *Settlement Capital Corp. v. BHG Structured Settlements, Inc.*, 319 F.Supp.2d 729, 732–33 (N.D. Tex. 2004) (citing *Johnson v. Dallas Ind. Sch. Dist.*, 38 F.3d 198, 199 (5th Cir. 1994)).  Rather, in this instance, the Court is merely tasked with evaluating whether ALM has stated a plausible claim for relief.  *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205.  Under Rule 9(b), fraud-based claims must be pleaded with particularity, including the "time, place, and contents

of the false representations, as well as the identity of the person making the misrepresentations and what he obtained thereby." *Tel-Phonic Servs., Inc.*, 975 F.2d at 1139.

ALM bases these allegations on TEX. BUS. & COM. CODE §§ 16.064(a)(4)–(5), 16.101. First Amended Answer ¶¶ 170–73. Section 16.064(a)(4)–(5) allows the Texas Secretary of State to cancel a trademark registration when a court of competent jurisdiction issues findings that support the cancellation or orders a cancellation of the trademark registration on any ground. TEX. BUS. & COM. CODE §§ 16.064(a)(4)–(5). More specifically, §§ 16.064(a)(4)(B), (C) and (D) place an obligation on the Texas Secretary of State to cancel a trademark registration when, respectively, (1) the registrant is not the owner of the mark, (2) the registered mark was granted improperly, or (3) the registered mark was obtained fraudulently. Similarly, § 16.101 provides that:

> [a] person who procures for the person of another the filing of an application or the registration of a mark under this chapter by knowingly making a false or fraudulent representation or declaration, oral or written, or by any other fraudulent means, is liable to pay all damages sustained as a result of the filing or registration. The damages may be recovered by or on behalf of the injured party in any court of competent jurisdiction.

TEX. BUS. & COM. CODE § 16.101.[5]

ALM has adequately pled these claims. ALM has explicitly alleged that Canales's trademark registration with the Texas Secretary of State was obtained fraudulently and in violation of the Texas Trademark Act. First Amended Answer ¶¶ 171, 173. ALM submits that Canales filed his trademark

---

[5] Because the law governing the registration and protection of trademarks in Texas was recently recodified and became effective on September 1, 2012, Texas courts have not yet had the opportunity to analyze the new law. 2011 Tex. Sess. Law Serv. Ch. 563 (H.B. 3141). Only one case has been decided since the new Texas Trademark Act became effective. *See Condom Sense, Inc. v. Alshalabi*, 390 S.W.3d 734 (Tex.App.—Dallas 2012, no pet. h.). However, as the issues in *Alshalabi* arose prior to the effective date of the new Texas Trademark Act, the Texas Court of Appeals did not consider the statutory language applicable to the instant case. *Id.* at 738.

registration application with the Texas Secretary of State on June 22, 2012, and asserted that he first used the "Supreme Court Insider" mark in connection with goods or services in 2005. *Id.* ¶¶ 143–44. ALM contends that this is a false statement. ALM further charges Canales with falsely and fraudulently representing to the Texas Secretary of State that he was the owner of the mark and that he had no knowledge of any other person or entity that was entitled to use the "Supreme Court Insider" mark when he submitted his application. *Id.* ¶ 145. According to ALM, this statement clearly contravenes Canales's own assertion that he became aware of ALM's use of the mark in October 2010. *Id.* ¶ 139. Construing these allegations in a light most favorable to ALM, the Court finds that ALM has sufficiently pled the contents of Canales's alleged misrepresentations, that he was the person making the misrepresentations, and that Canales obtained a Texas trademark registration as a result of those misrepresentations.

The same is the case with regard to Rule 9(b)'s time and place requirements. Although Canales argues that ALM has not identified the place where the alleged false statements were made, the letter Canales *hand-delivered* to the Texas Secretary of State on June 22, 2012, regarding his trademark application (which Canales himself asks this Court to consider) clearly indicates the time and place of the application.[6] Dkt. No. 27, Exh. G. The Court also rejects Canales's contention that

_____

[6] Canales urges this Court to consider a letter he hand-delivered to the Texas Secretary of State's Office regarding his trademark application. Dkt. No. 27 at 17, Exh. G. ALM opposes this Court's consideration of the letter because it introduces improper evidence on a Rule 12(b)(6) motion, citing to the Fifth Circuit's opinion in *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000). Dkt. No. 29 at 17. Although the Fifth Circuit in *Collins* did note that a district court should limit its consideration "to the contents of the pleadings, including attachments thereto," the *Collins* court also stated, with approval, that a court may consider documents attached to a motion to dismiss if the documents are both referred to in the complaint and are obviously central to the party's allegations. *See Collins*, 224 F.3d at 498–99; *see also Kane Enter. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003). Here, Canales's trademark application with the Texas Secretary of State is clearly referred to in ALM's counterclaims and is central to its fraud-based

the Court should dismiss the fraud-based counterclaims because ALM alleged the incorrect filing of the Texas trademark application. *Id.* at 17. First, ALM need not always identify a specific date and time as to Canales's alleged false representations. *See, e.g.*, *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 372 (5th Cir. 2004) (recognizing that a specific time and place need not always be identified to satisfy the pleading standards of Rule 9(b)). In this case, it is clear that ALM is basing its fraud-based counterclaims upon Canales's trademark application with the Texas Secretary of State. First Amended Answer ¶¶ 170–73. ALM has identified a specific date on which it claims Canales filed his Texas trademark application—June 22, 2012. However, even if the actual filing date of Canales's Texas trademark application differs from June 22, 2012, the appropriate remedy would be to give ALM the opportunity to cure this deficiency, not to dismiss its fraud-based counterclaims altogether. *See, e.g.*, *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (opining that although a court may dismiss a claim pursuant to Rule 9(b), "it should not do so without granting leave to amend, unless the defect is simply incurable or the [party] has failed to plead with particularity after being afforded repeated opportunities to do so"). Here, ALM's pleadings provide Canales sufficient notice regarding the circumstances on which ALM is basing its allegations.

Canales's remaining arguments against ALM's fraud-based counterclaims also fail. While Canales purports to assert that he is challenging ALM's fraud-based counterclaims for failure to plead fraud with particularity under Rule 9(b), he again attempts to argue for dismissal of ALM's

---

claims against Canales. The letter concerned amendments to Canales's application to register the mark "Supreme Court Insider" with the Texas Secretary of State. Consequently, the Court will consider the letter in its evaluation of Canales's Motion to Dismiss. However, in doing so, the undersigned is mindful to consider the letter only as it pertains to the Court's current task of determining whether ALM has sufficiently stated its fraud-based claims against Canales.

fraud-based counterclaims based on the purported merits. For example, at this stage, the Court need not determine whether ALM's assertion that it has "superior rights" in the "Supreme Court Insider" mark is meritless. Rather, the Court has merely concluded that ALM has sufficiently pled its counterclaim in accordance with the standard set forth by Rule 9(b). To the extent Canales asserts that the Court should dismiss ALM's fraud-based counterclaims because ALM does not have "superior rights" in the "Supreme Court Insider" mark as a result of the TTAB's decision, such a determination would consider the merits of ALM's counterclaims, which is inappropriate at this stage in the proceedings. *Settlement Capital Corp.*, 319 F.Supp.2d at 732–33. Similarly, Canales also attempts to argue for dismissal by asserting that he is the owner of the "Supreme Court Insider" mark. Dkt. No. 27 at 17. Again, whether Canales is the rightful owner of the "Supreme Court Insider" mark is a merit-based determination that is not appropriate on a motion to dismiss.

Finally, the Court is unpersuaded by Canales's contention that ALM's fraud affirmative defense states legal conclusions. ALM pleads as an affirmative defense that Canales "committed fraud when he attempted to register the trademark ["Supreme Court Insider"] with the Texas Secretary of State." First Amended Answer ¶ 96. Canales contends that ALM's assertion is a legal conclusion that does not satisfy the pleading requirements of Rule 9(b). Dkt. No. 27 at 18. As noted above, the Court has found sufficient information in ALM's First Amended Answer to provide Canales with fair notice of the facts on which ALM is claiming he committed fraud when applying for his Texas trademark. *See, e.g.*, *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) (recognizing that one of the objectives of Rule 9(b) is to provide the other party with fair notice of the claims alleged). ALM's affirmative defense of fraud is based on the same set of alleged facts as its fraud-based counterclaims. As such, the Court concludes that ALM has sufficiently stated

its affirmative defense of fraud and will recommend that the District Judge **DENY** Canales's Motion to Dismiss as it pertains to ALM's affirmative defense of fraud.

## IV.  RECOMMENDATION

In summary, the Court **RECOMMENDS** that the District Judge **DENY** Plaintiff/Counter-Defendant Ramiro Canales's Motion to Dismiss, except with regard to ALM's request for a declaratory judgment under the Texas Uniform Declaratory Judgment Act**,** which claim the Court recommends be dismissed.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.   A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is

directed to mail such party a copy of this Report and Recommendation by certified mail, return

receipt requested.

SIGNED this 18th day of October, 2013.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE